IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


TROY WAYNE FLETCHER                                          PLAINTIFF

           v.                            Civil No. 10-5035

SHERIFF KEITH FERGUSON;
CAPT. ROB HOLLY;
LT. CARTER; SGT. VAUGHN;
SGT. TORRES; DEPUTY FREEMAN;
CPL. JOHNSON; and DR. JOHN HUSKINS                           DEFENDANTS


**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

        Plaintiff filed this civil rights action pursuant to the provisions of 42 U.S.C. § 1983.

He proceeds *pro se* and *in forma pauperis.*

        Plaintiff is currently incarcerated in the United States Penitentiary located in Tucson,

Arizona.  The events that are the subject of this action occurred while he was incarcerated in

the Benton County Detention Center (BCDC) from October of 2009 to November of 2010.

Plaintiff's claims stem from an incident that occurred on November 25, 2009, when a cleaning

chemical splashed into his left eye.  Plaintiff contends his constitutional rights were violated

in the following ways:  when medical care or treatment for his eye was delayed; when his

grievances went unanswered; when he was subjected to unsafe conditions that resulted in the

chemical spill and there being no eye wash stations; and because jail staff were not properly

trained to deal with the incident.  Plaintiff names as Defendants:  Sheriff Keith Ferguson;

Captain Rob Holly; Lieutenant Carter; Sergeant Vaughn; Sergeant Torres; Deputy Freeman;

and Corporal Johnston.

-1-

A second renewed motion for summary judgment has been filed on behalf of Defendants (Docs. 42, 43 & 44).  Plaintiff filed his response (Doc. 47).  In his response, he indicates he has done no discovery and to allow the motion to be decided at this point would deny him adequate and meaningful access to the courts.

The Court notes that this case was filed on February 17, 2010.  Defendants answered on April 26, 2010 (Doc. 14).  At that time, Plaintiff could have, and should have, submitted discovery requests to the Defendants.  Plaintiff does not indicate the reason he did not engage in discovery.  More than two years have passed since he filed this lawsuit.  He has had more than ample opportunity to engage in discovery.

The Court will consider the substantive response (Doc. 37) Plaintiff submitted in connection with the initial summary judgment motion.  The response (Doc. 37) contains his summary of the events underlying this lawsuit and of the claims against each Defendant.  The motion is now ready for decision.

**1.  Background**

Plaintiff was booked into the BCDC on October 7, 2009, on pending criminal charges. *Defendants' Exhibit* 1 at pg. 1 (hereinafter *Defts' Ex.*).  Dr. Huskins first saw Plaintiff on October 9 for complaints of pustules on his waist, arthritis pain, and reflux.  *Defts' Ex.* 2 at pg. 2.  Plaintiff also mentioned he had been on medication for blood pressure.  *Id.*  Dr. Huskins placed Plaintiff on blood pressure medication, medication for the pustules, and Pepcid for his stomach.  *Id.* at pg. 3.

Dr. Huskins next saw Plaintiff on October 14th.  *Defts' Ex.* 2 at pg. 3.  Plaintiff complained about not being able to sleep, hip and back pain, and he also wanted his blood

-2-

sugar checked.  *Id.*  Dr. Huskins ordered pain medication and ordered blood sugar checks daily for five days.  *Id.*

Plaintiff was next seen by Dr. Huskins on November 9th.  *Defts' Ex.* 2 at pg. 3. Plaintiff asked for his blood pressure to be checked and complained he was still having pain and trouble sleeping.  *Id.*  Plaintiff' blood pressure was normal.  *Id.*  Dr. Huskins continued Pepcid for Plaintiff's stomach, Tylenol for his back, and amitriptyline for sleep.  *Id.*

On November 25th, Dr. Huskins again saw Plaintiff.  *Defts' Ex.* 2 at pg. 4.  Plaintiff asked for medication for his back and hip pain and Vaseline for his toe.  *Id.*  Plaintiff 's blood pressure was checked and it was normal.  *Id.*

According to Plaintiff, on November 25, 2009, while he was under orders to clean the pod, Inmate Thompson passed him a container of cleaning chemical.  *Plaintiff's Response* (Doc. 37) at ¶ 2(C)(hereinafter *Plff's Resp.*).  Plaintiff maintains the container lid was broken or damaged from frequent reuse.  *Id.*  As the chemical was passed down from the second tier to the first tier, Plaintiff indicates some of the chemical spilled into his eye.  *Id.*

Plaintiff states that various members of the BCDC staff witnessed the incident, including Sergeant Torres and Corporal Johnson.  *Plff's Resp.* at ¶ 2(C),   Despite this, he indicates he did not receive immediate assistance but instead had to wait at the pod door for Deputy Freeman.  *Plff's Resp.* at ¶ 2(C).  Plaintiff was taken to the nurse's station.  *Id.* However, once there, Deputy Freeman advised Plaintiff there was no eye-wash station or anything that could help him either in the nurse's station or anywhere in the building.  *Id.*

Plaintiff states Deputy Freeman walked him back to his pod and ordered him to lock-down. *Plff's Resp.* at ¶ 2(C). Plaintiff indicates that he was unable to wash out his eye because his sink did not work properly. *Id.* at ¶ 2(D).

On November 30th, Plaintiff submitted a grievance regarding the denial of medical care and unsafe handling of chemicals related to an injury to his eye. *Defts' Ex.* 3 at pgs. 9-10. He indicated that immediately following the spill, his eye was red and swollen and he was in agonizing pain. *Id.* at pg. 10. Because his sink did not work, Plaintiff stated he was unable to flush his eye but instead held a damp piece of toilet paper on it. *Id.* On November 26th, at morning medication call, Plaintiff stated he explained what happened and was provided with some saline solution from the medication cart. *Id.* However, he indicated his eye was so swollen that he could not get the solution in his eye. *Id.* Plaintiff complained that the vision in his eye was blurred, sensitive to the light, and matted shut. *Id.* Even though his situation was very serious, Plaintiff stated he did not see a doctor or nurse until five days later. *Id.*

According to Dr. Huskins, he saw Plaintiff on November 30th and diagnosed Plaintiff with conjunctivitis, an inflammation of the lining of the left eye. *Defts' Ex.* 2 at pg. 4. Conjunctivitis can be caused by an infection or chemical or a foreign body in the eye. *Id.* at pgs. 4-5. Dr. Huskins prescribed an oral antibiotic and antibiotic eye drops. *Id.* at pg. 4. Dr. Huskins indicated the chart had a note from the nurse that a chemical had been splashed in Plaintiff's eye. *Id.* Dr. Huskins' own notes contain no mention of this. *Id.*

On December 6th, Plaintiff submitted a request for medical care. *Defts' Ex.* 3 at pg. 11. He stated that he had staph on his arm and needed his left eye checked. *Id.* In response, it was noted Plaintiff was on the list to see the doctor. *Id.*

-4-

Plaintiff was seen by Dr. Huskins on December 7th, and was prescribed antibiotic cream for a pustule on his arm. *Defts' Ex.* 2 at pg. 5.  Dr. Huskins noted that Plaintiff's eye appeared clear, meaning the conjunctivitis had cleared up.  *Id.*  Additionally, Plaintiff's blood pressure and stomach medications were continued.  *Id.*  Plaintiff disagrees that his eye was clear and states he sought referral to an outside specialist.  *Plff's Resp.* at ¶ 3(F).

On December 8th, Plaintiff submitted another medical request. *Plff's Resp.* at ¶ 4(A); *Defts' Ex.* 4 at pg. 2.  He asked to see the doctor regarding his prescription eye drops and stated he still had a "fog" on his left eye.  *Id.*  With respect to the eye drops, Plaintiff states the prescription was for ten days but it took three days to get the prescription filled.  *Plff's Resp.* at ¶ 4(B).  Despite this, he indicates the drops were discontinued on the tenth day even though he had only actually received the drops for seven days.  *Id.*

On December 11th, Plaintiff was seen by Dr. Huskins.  *Defts' Ex.* 2 at pg. 6.  Plaintiff asked for a referral to an eye specialist.  *Id.*  Although Dr. Huskins did not note any problems with Plaintiff's eye that day, he approved Plaintiff's request to see an eye specialist and also started Plaintiff back on the eye drops.  *Id.* at pgs. 6-7.   An appointment was scheduled with Dr. Woodward at the BoozmanHof Eye Clinic at that time.  *Id.*

On December 16th, Plaintiff saw Dr. C. Scott Woodward at the BoozmanHof Eye Clinic.  *Defts' Ex.* 3 at pg. 5.  Dr. Woodward noted no problems with Plaintiff's pupils, lids, cornea, conjunctiva, lens, or retina.  *Id.*  Dr. Woodward listed Plaintiff's diagnosis as

-5-

AO72A
(Rev. 8/82)

hyperopia/presbyopia.[1]   Plaintiff was prescribed Systene artificial tears eye drops.  *Id.*  No further treatment or follow-up visits were scheduled.  *Id.*

Plaintiff believes he may have complications that Dr. Woodward was not able to diagnose at the time.  *Plff's Resp.* at ¶ 6(C).   He also contends he still suffers from a loss of peripheral vision.  *Id.* at ¶ 9(C).  Although he has not received any additional medical care for his eye, Plaintiff indicates he has asked for medical care as a result of the loss of vision and is on the list to be seen at his current unit of incarceration.  *Id.* at ¶¶ 9(C) & 11(D).

Plaintiff was seen by Dr. Huskins on December 18th, December 28th, January 6, 2010, January 8th, January 25th, February 3rd, March 3rd, March 10th, and March 29th.  *Defts' Ex.* 2 at pgs. 7-10.  According to Dr. Huskins, Plaintiff did not mention any continuing eye problems at any of these appointments.  *Id.*  Further, Dr. Huskins made no notations about Plaintiff having any further problems with his eye.  *Id.*

According to Plaintiff, he saw Dr. Huskins on numerous occasions after March of 2010.  *Plff's Resp.* at ¶ 11(A).  In addition, Plaintiff states he continued to complain of problems with his eye.  *Id.*  Plaintiff believes Dr. Huskins failed to make notes regarding the complaints.  *Id.*  Plaintiff asserts that Dr. Huskins did not note all complaints and tended to minimize the complaints without treating them.  *Id.*

Plaintiff was asked how each of the Defendants exhibited deliberate indifference to his serious medical needs.  With respect to Dr. Huskins, Plaintiff maintains he improperly diagnosed Plaintiff's eye problems knowing that he had neither the proper training nor

---

[1] Hyperopia is defined as farsightedness.  Stedman's Medical Dictionary (27th ed. 2000).  Presbyopia is defined as the "physiologic loss of accommodation in the eyes in advancing age."  *Id.*  A third notation appears in the form in the area for impressions/diagnosis.  However, the term is not legible.

-6-

equipment. *Plff's Resp.* at ¶ 12.  With respect to Sheriff Ferguson, Captain Holly, and Lieutenant Carter, Plaintiff contends they failed to:  ensure medical staff were available on evenings, weekends, and holidays; train staff in proper safety practices and emergency medical care; authorize, require, or provide personal protective gear for prisoners; provide eye wash stations; and authorize, allow, or require urgent cell repairs such as the repair of broken sinks. *Id.* at ¶¶ 13-15.  With respect to Sergeant Vaughn, Sergeant Torres, and Corporal Johnston, Plaintiff states they personally observed Plaintiff's injuries and failed to render assistance or summon others to help.  *Id.* at ¶¶ 16-17 & 19.  Additionally, Plaintiff maintains Sergeant Vaughn, Sergeant Torres and Corporal Johnston failed to properly train subordinate staff, did not require personal protective gear and eye wash stations, did not allow or require urgent cell repairs, and directed inmates, including the Plaintiff, to perform cleaning duties in an unsafe manner. *Id.*  Finally, with respect to Deputy Freeman, Plaintiff states he saw the eye wash or treatment supplies in the nurse's station and failed to recognize them or deliberately ignored them leading to "non-treatment and exacerbation" of Plaintiff's injuries. *Id.* at ¶ 18.  Plaintiff contends Deputy Freeman also failed to pass on a request for, or failed to require, urgent cell repairs. *Id.*

## 2. Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a summary judgment motion, the Court cannot weigh the evidence or resolve disputed issues of fact in favor of the moving party.  <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 255 (1986).

-7-

"[A] disputed fact alone will not defeat summary judgment, rather there must be a genuine issue of material fact.  To be material, a fact must affect the outcome of the suit under the governing law."  Torgerson v. City of Rochester, 2011 WL 2135636, *16 (8th Cir. June 1, 2011)(internal quotation marks and citations omitted).

### 3.  Discussion

Defendants maintain they are entitled to judgment in their favor for the following reasons:  first, they have been sued in their official capacities only and there is no evidence of any unconstitutional Benton County policy or custom;  second, they maintain there is no evidence of deliberate indifference on their part to Plaintiff's serious medical needs; third, they argue there is no constitutional right to a grievance procedure or to have grievances answered; fourth, they maintain there is no proof of any unconstitutional conditions of confinement; fifth, they argue Plaintiff can offer no proof of any failure to train; and sixth, Plaintiff can offer no proof of any actual physical injury.  Each argument will be addressed in turn.

### A.  Individual versus Official Capacity Claims

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution.  West v. Atkins, 487 U.S. 42, 48 (1988); Dunham v. Wadley, 195 F.3d 1007, 1009 (8th Cir.1999).   The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983.  Daniels v. Williams, 474 U.S. 327 (1986); Davidson v. Cannon, 474 U.S. 344 (1986).

-8-

Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities.  In <u>Gorman v. Bartch</u>, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits.  As explained by the <u>Gorman</u> case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).  Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24-27, 112 S. Ct. at 361-62 (1991).  Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S. Ct. at 362.

<u>Gorman,</u> 152 F.3d at 914.

The Eighth Circuit has consistently advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability.  <u>Nix v. Norman,</u> 879 F.2d 429, 431 (8th Cir. 1989); <u>see also Andrus v. Arkansas</u>, 197 F.3d 953 (8th Cir. 1999)(In actions against officers, specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability).  When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only.  <u>See Johnson v. Outboard Marine Corp.</u>, 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must

-9-

expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity").

In this case, Plaintiff is proceeding *pro se*. While his complaint does not specify he is bringing both individual and official capacity claims, in response to the summary judgment motion, he indicates he is asserting claims against the Defendants in both capacities. Id. Given that the distinction is difficult for even those with legal training to understand, see e.g., Vanhorn v. Oelschlager, 502 F.3d 775, 779 (8th Cir. 2007)(state officials misconstrued the differences between official and individual capacity claims and the immunities available), I believe the complaint should be construed as asserting both individual and official capacity claims.

### B.  Denial of Medical Care

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. See Butler v. Fletcher, 465 F.3d 340, 344 (8th Cir. 2006). To prevail on an Eighth Amendment claim, plaintiff must prove that defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'"  Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting  Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir.1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal

-10-

recklessness, which demands more than negligent misconduct." <u>Popoalii v. Correctional Med. Servs</u>, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

Here, Plaintiff's claim is premised on the periods of delay in his receipt of treatment following the chemical being splashed in his eye. He maintains he should have had immediate access to an eye wash station or at least some method of washing out his eye. Even once he was able to wash his eye out, he points out he was not seen by Dr. Huskins until November 30th. Plaintiff additionally maintains he should have been seen by an eye doctor prior to December 16th.

Deliberate indifference may be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." <u>Jenkins v. County of Hennepin, Minn</u>., 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence. <u>Laughlin v. Schriro</u>, 430 F.3d 927, 928 (8th Cir. 2005).

In this case, Plaintiff's eye was treated on two occasions and there is nothing to suggest that the condition worsened or that Plaintiff was in anyway harmed by the delay in his receipt of treatment. Certainly, there is no verifying medical evidence to establish the effect of the delay. The claims against Lieutenant Carter, Sergeant Vaughn, Sergeant Torres, Deputy Freeman, and Corporal Johnston, therefore fail. With regard to Sheriff Ferguson and Captain Holly, there is nothing in the summary judgment record suggesting they knew about the chemical having splashed into Plaintiff's eye or his need for medical treatment because of it.

-11-

Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007)(to establish personal liability of a supervisory defendant, plaintiff must show personal involvement in, or direct responsibility for, deprivation of constitutional rights).

With respect to Dr. Huskins, he first became aware of the fact that a chemical had been splashed in Plaintiff's eye on November 30th. *Defts' Ex.* 2 at pg. 4. He diagnosed conjunctivitis and prescribed both an oral antibiotic and antibiotic eye drops. *Id.* When he next saw Plaintiff on December 7th, Dr. Huskins believed the conjunctivitis had cleared up. *Id.* at pgs. 5-6. Nevertheless, on December 11th, when Plaintiff requested a referral to an eye doctor because of continued complaints, Dr. Huskins started him on eye drops again and referred him to an eye doctor. *Id.* I find no genuine issue of material fact as to whether Dr. Huskins exhibited deliberate indifference to Plaintiff's serious medical needs.

## C.  Inadequate Grievance Procedure

Plaintiff contends his grievances were not handled properly, he did not always get responses, or only received partial responses. Plaintiff was able to submit grievances and medical requests. While most of his grievances and requests received a written response, he maintains the problems he identified in his grievances were not addressed.

Plaintiff has not identified a federal constitutional right that he was deprived of because of the alleged inadequacies in the grievance procedures. He makes no argument that he was treated differently from other similarly situated prisoners, or that his grievances were ignored because of his exercise of his constitutional rights, or that his ability to exercise any specific constitutional right was chilled by Defendants' actions.

"[N]o constitutional right was violated by defendants' failure, if any, to process all of the grievances [Plaintiff] submitted for consideration." Buckley v. Barlow, 997 F.2d 494, 495

(8th Cir. 1993)(citation omitted).  "Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." Blagman v. White, 112 F. Supp. 2d 534,542 (E.D. VA 2000) (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)).  A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available." *Id.* (citation omitted). "[A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005).

### D.  Unconstitutional Conditions of Confinement

Here Plaintiff contends he was housed under the following unsafe conditions: no protective gear of any type was provided for use with the cleaning chemicals; the chemicals were put in unlabeled containers that were reused until they were unsafe; there were no eye wash stations; medical staff were not available at night, on weekends, or holidays; and urgently required cell repairs such as broken sinks were not dealt with in a prompt manner.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."  County of Sacramento v. Lewis, 523 U.S. 833, 851 (1998)(citation omitted).  In this Circuit, the Eighth Amendment's deliberate indifference standard of culpability applies to all claims that detention officials have failed to provide adequate food, clothing, shelter, medical care, and reasonable safety. Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006); see also Hartsfield v. Colburn, 491 F.3d 394, 396 (8th Cir. 2007).  This is true whether the Plaintiff is a pretrial detainee or a convicted prisoner.  *Id.*

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Cruel and Unusual

-13-

Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or that are "grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element." Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004)(citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" Revels, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." Id. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976).

In reviewing working conditions in a detention facility, the Court of Appeals for the Eighth Circuit noted that even if detention officials were "aware of safety problems at the warehouse, such a showing falls short of creating a genuine issue of deliberate indifference to workplace safety. To convert conduct that does not even purport to be punishment into conduct violative of the Eighth Amendment, more than ordinary lack of due care for the prisoner's interests or safety must be shown." Stephens v. Johnson, 83 F.3d 198, 201 (8th Cir. 1996)(internal quotation marks and citation omitted).

In Stephens, the inmates complained of working conditions in a warehouse. Id. Among other things, they claimed they should have been issued safety equipment such as hard

-14-

hats and protective eye wear. *Id.* They also complained of the lack of safety training and that no first aid kits were available. *Id.* The court concluded the conduct in not providing greater safety precautions was at most negligence. *Id.*

Although not at a prison job site, Plaintiff states he was under orders to clean when the incident occurred. I therefore believe the <u>Stephens</u> reasoning applies equally to this case. There is no evidence to suggest there have been multiple spills of cleaning chemicals or that any other inmates have suffered injury as a result of not having been provided with safety equipment such as safety glasses. Accordingly, Plaintiff's claim regarding unsafe conditions is subject to summary judgment.

### E.  Failure to Train

 "This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." <u>McCoy v. City of Monticello</u>, 411 F.3d 920, 922 (8th Cir. 2005). "Similarly, to maintain an action for training or supervisory liability, a plaintiff must show the failure to train or supervise caused the injury." <u>Moore v. City of Desloge</u>, 2011 WL 3189357 (8th Cir. July 28, 2011). As no individual liability exists, all claims against the supervisory Defendants based on an alleged failure to train detention center personnel fail as a matter of law.

### 4.  Conclusion

For the reasons stated, I recommend that the summary judgment motion (Doc. 44) be granted and this case dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions**

-15-

of fact.  **The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of August 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-16-